# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EAN MCNANEY,                                    *

    *Plaintiff,*                              *

    v.                                           *       **Case No. 1:23-cv-02396-JRR**

AMERICAN COLLECTIONS                            *
ENTERPRISE, INC.,
                                        *

    *Defendant.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This matter comes before the court on Defendant American Collections Enterprise, Inc.'s Motion to Dismiss the First Amended Complaint for Failure to State a Claim. (ECF No. 14; the "Motion"). The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.    BACKGROUND[1]

This action arises out of numerous alleged telephone calls made by Defendant to Plaintiff in an attempt to collect on a debt incurred by Plaintiff's father. (ECF No. 13.) Plaintiff Ean McNaney is a citizen of the State of Maryland. *Id.* ¶ 4. Defendant is a debt collection agency located in Alexandria, Virginia. *Id.* ¶ 5.

Plaintiff alleges that a financial obligation (the "Debt") was incurred by his deceased father to an original creditor. (ECF No. 13 ¶ 6.) The Debt was purchased, assigned, or transferred to Defendant for collection, or Defendant was employed by the original creditor to collect the Debt.

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Amended Complaint. (ECF No. 13.)

*Id.* ¶ 8.  Plaintiff alleges that the Debt arose from services provided by the original creditor, which were primarily for family, personal or household purposes.  *Id.* ¶ 7.  Plaintiff's father did not have any business debts.  *Id.*  Plaintiff alleges he is neither associated with nor responsible for repayment of his father's debt.  *Id.* ¶ 18

In or around May 2022, Defendant called Plaintiff's telephone in an attempt to collect the Debt allegedly owed by Plaintiff's father.  (ECF No. 13 ¶ 10.)  Defendant asked to speak with Plaintiff's father.  *Id.* ¶ 11.  Plaintiff informed Defendant that his father was deceased and requested that Defendant cease calling him.  *Id.* ¶ 12.  Plaintiff alleges that Defendant continued to call Plaintiff a couple of times per month for about a year.  *Id.* ¶ 13.  On or around March 14, 2023, Defendant called Plaintiff's telephone again and asked to speak with Plaintiff's father.  *Id.* ¶ 14. Plaintiff again informed Defendant that his father was deceased and requested that Defendant cease calling him.  *Id.* ¶ 16.

Plaintiff alleges that Defendant's repeated calls after notifying Defendant that his father was deceased "were harassing and abusive," and caused him significant distress.  (ECF No. 13 ¶¶ 15, 17.)  Specifically, Plaintiff alleges that Defendant's "calls to Plaintiff deprived Plaintiff of the use of his cellular telephone, increased Plaintiff's risk of personal injury resulting from the distraction and distress caused by Defendant's calls, increased usage of Plaintiff's telephone service, and decreased battery life of Plaintiff's cellular telephone."  *Id.* ¶ 20.

On September 1, 2023, Plaintiff filed the Complaint.  (ECF No. 1.)  On November 9, 2023, Plaintiff filed the Amended Complaint.  (ECF No. 13.)  The Amended Complaint sets forth three counts: Violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") (Count I); Violations of the Maryland Consumer Debt Collection Act, MD. CODE ANN., COMM. LAW §§ 14-201, *et seq.* ("MCDCA") (Count II); and Invasion of Privacy by Intrusion

Upon Seclusion (Count III).   (ECF No. 13.)   The prayer for relief seeks actual and statutory damages, costs and attorney's fees, and any other relief this court deems just and proper.   *Id.*

## II.   LEGAL STANDARDS

### Federal Rule of Civil Procedure 12(b)(1)[2]

"Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction."   *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016) ("Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction.").   The party invoking federal jurisdiction bears the burden of establishing standing.   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."   *Id.* at 561.   "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."   *Id.* (citation omitted).   "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true."   *Id.* (citation omitted).

### Federal Rules of Civil Procedure 8(a) and 12(b)(6)

Pursuant to Rule 8(a), "[a] pleading that states a claim for relief must contain . . .  a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a).

---

[2] While Defendant does not move to dismiss pursuant to Rule 12(b)(1), the Motion makes argument regarding Plaintiff's standing to bring his claims, which is properly analyzed under Rule 12(b)(1).

"In 2007, the Supreme Court of the United States set forth a new standard to be applied in assessing whether, under Rule 8(a)(2), a claim was articulated sufficiently to permit a court to conclude that, if its allegations were proved, relief could be granted.  In so doing, the Supreme Court retired the standard of sufficiency under Rule 8(a)(2) that was set in *Conley v. Gibson*, 355 U.S. 41, [] (1957)." *Macronix Int'l Co., Ltd. v. Spansion, Inc.,* 4 F. Supp. 3d 797, 799 (E.D. Va. 2014).  The *Conley* Court explained the requirements for a legally sufficient complaint as follows:

> The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' [citing Rule 8(a)(2)] that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this.

355 U.S. at 48.

"In *Twombly*,[3] the Court changed significantly how the legal sufficiency of a claim is to be measured when it is attacked under Rule 12(b)(6).  As one eminent scholar of federal civil procedure has said of *Twombly*: 'Notice pleading is dead.  Say hello to plausibility pleading.'" *Macronix,* 4 F. Supp. 3d at 799-800 (quoting A. Benjamin Spencer, *Plausibility Pleading*, 49 B.C. L. REV. 431, 431-32 (2008)).  The "liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a 'plausible' picture of liability."  *Id.; see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 262 (4th Cir. 2009) (Jones, J., concurring in part, dissenting in part, and remarking that "*Twombly* and *Iqbal*[4] announce a new, stricter pleading standard.")

---

[3] *Bell Atl. Corp., v. Twombly,* 550 U.S. 544 (2007).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

4

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly,* 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not show[n]—that the pleader is entitled to relief." *Id.* (citing FED. R. CIV. P. 8(a)(2)).

"The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is ". . . not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Id.* (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

III.    <u>ANALYSIS</u>

A.    <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *Id.* Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff bears the burden of establishing these three elements. *Id.* Because the instant case is at the pleading stage, Plaintiff may rely on general factual allegations of injury resulting from Defendant's conduct. *See Lujan, supra.*

The first element, injury-in-fact, requires "a plaintiff [to] show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). In *Spokeo*, the Supreme Court made clear that a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 341. Rather, "'Article III standing requires a concrete injury even in the context of a statutory violation.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341). "[C]ertain harms readily qualify as concrete injuries under Article III." *Id.* at 2204. "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *Id.* "Various intangible harms can also be concrete." *Id.* "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American

courts[,] . . . for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

In the Amended Complaint, Plaintiff alleges that through its repeated calls and attempts to collect on a debt owed by Plaintiff's deceased father, Defendant violated FDCPA §§ 1692d,[5] 1692e,[6] 1692f,[7] MDCPA § 14-202(6),[8] and committed the common law tort of intrusion upon seclusion. Defendant argues there are no allegations to suggest that Plaintiff was exposed to injury. (ECF No. 14-1 at 6.) In response, Plaintiff argues that he alleges an intangible concrete harm (*i.e.*, intrusion upon seclusion) that affects him personally (*i.e.*, significant emotional distress) as a result of Defendant's unlawful conduct. (ECF No. 17 at 9, 11.) Specifically, Plaintiff contends that "[c]ourts have repeatedly found Article III standing to pursue section 1692d claims based on a debt collector's placement of calls following a verbal request to cease the calls because the associated harm is analogous to intrusion upon seclusion." *Id.* at 9.

The Supreme Court has recognized that "[v]arious intangible harms can also be concrete" and that, specifically, intrusion upon seclusion is an example of a harm "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425; *see Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021) (providing that "[a]t common law, courts readily recognized a concrete injury arising from the tort of intrusion upon seclusion—a tort protecting against defendants who intrude into the private solitude of another."). The tort of intrusion upon seclusion imposes liability in situations when "telephone calls are repeated with

---

[5] The FDCPA prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

[6] The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

[7] The FDCPA further prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

[8] Under the MCDCA, a debt collector may not: "[c]ommunicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor[.]" MD. CODE ANN., COM. LAW § 14-202(6).

such persistence and frequency as to amount to a course of hounding the plaintiff." REST. (SECOND) OF TORTS § 652B cmt. d (1977); *see Lupia*, 8 F.4th at 1191 ("This tort imposes liability for intrusions on a plaintiff's privacy, such as when a defendant demands payment of a debt by making repeated telephone calls with such persistence and frequency as to amount to a course of hounding the plaintiff.") (citations omitted)); *Drake v. Synchrony Bank*, No. CV CCB-19-2134, 2023 WL 6621345, at *3 (D. Md. Oct. 11, 2023) ("More frequent calling can amount to an invasion of privacy if "the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence[.]") (quoting *Neal v. United States*, 599 F. Supp. 3d 270, 306-307 (D. Md. 2022)).

FDCPA violations have been found to be closely related to the traditional common law harm of intrusion upon seclusion. *See Lupia*, 8 F.4th at 1191 (concluding that the plaintiff "suffered an injury bearing a close relationship to the tort of intrusion upon seclusion" where the defendant "made an unwanted call and left her a voicemail about a debt, despite her having sent written notice disputing the debt and requesting that it cease telephone communications"); *Atkins v. Healthcare Revenue Recovery Grp., LLC*, No. 21 CV 2408, 2023 WL 22138, at *4 (N.D. Ill. Jan. 3, 2023) (noting that "repeated and intrusive calls are analogous to intrusion upon seclusion, regardless of whether they're made in violation of the TCPA or FDCPA") (citation omitted)); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) (concluding that unwanted text messages can constitute a concrete injury in fact for Article III standing to sue under the Telephone Consumer Protection Act).

Plaintiff directs the court's attention to *Abraham v. Glob. Tr. Mgmt. LLC*, No. 21-10323, 2022 WL 19001830 (E.D. Mich. Sept. 21, 2022). In *Abraham*, the plaintiff alleged that the defendant's "frequent, repeated phone calls, continued after [the plaintiff] requested they stop,

violated the FDCPA," specifically §§ 1692d and 1692f. *Id.* at *2. The defendant argued that the court lacked subject matter jurisdiction over the plaintiff's FDCPA claims because the plaintiff lacked standing to bring them. *Id.* at *2. The *Abraham* court disagreed:

> "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. A plaintiff "does not automatically have standing simply because Congress authorizes [him] to sue a debt collector for failing to comply with the FDCPA." *Ward v. Nat'l Patient Account Srvcs. Solutions, Inc.*, 9 F.4th 357, 361 (6th Cir. 2021). To establish Article III standing for a FDCPA action, a plaintiff must show that the procedural violation of the FDCPA is itself a concrete injury of the sort traditionally recognized or that the procedural violation caused an independent concrete injury. *Id.*
>
> Abraham asserted that GTM's frequent, repeated phone calls, continued after Abraham requested they stop, violated the FDCPA, specifically §§ 1692d (prohibits debt collector from engaging "in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt"), 1692d(5) (prohibits "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number"), and 1692f (prohibits debt collector from employing "unfair or unconscionable means to collect any debt"). To demonstrate that these alleged statutory violations constitute a concrete injury sufficient to confer Article III standing, Abraham must show that GTM's repeated phone calls to him regarding the collection of his debt "resemble[ ] a harm traditionally regarded as providing a basis for a lawsuit." *Id.* at 362 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)).
>
> The Sixth Circuit has recognized that alleged harms akin to invasion of privacy and intrusion upon the right to seclusion can provide the basis for a concrete injury under the FDCPA. *See id.* Indeed, "one of the purposes of the FDCPA is to stop abusive debt collection practices that contribute to invasions of individual privacy." *Id.* (citing 15 U.S.C. § 1692d). The *Ward* court concluded that the failure to disclose a debt collector's identity was not sufficiently related to the common law injury of invasion of privacy to create a concrete harm for the purposes of Article III standing. However, a recent decision from this district held that repeated unwanted phone calls do create an injury closely resembling the common-law harm of invasion of privacy. *Chapman v. Nat'l Health Plan & Benefits*

> *Agency, LLC*, —— F. Supp. 3d ——, 2022 WL 3130225, at *4 (E.D.
> Mich. Aug. 4, 2022). Invasion of privacy may be defined as "an
> intentional intrusion, physically or otherwise, upon the solitude of
> another" and "[c]ourts have . . . recognized liability for intrusion
> upon seclusion for irritating intrusions—such as when telephone
> calls are repeated with such persistence and frequency as to amount
> to a course of hounding the plaintiff." *Id.* at 4-5 (quoting
> RESTATEMENT (SECOND) OF TORTS § 652B and *Gadelhak v. AT & T
> Servs.*, 950 F.3d 458, 462 (7th Cir. 2020)) (marks omitted).

2022 WL 19001830, at *2. Therefore, because the plaintiff's alleged injury caused by the

defendant's repeated and frequent phones calls was closely related to the traditional harm

associated with common law invasion of privacy, the court found that the plaintiff had Article III

standing to pursue his FDCPA claims. *Id.*

Here, in the Amended Complaint, Plaintiff alleges:

> In or around May 2022, the Defendant called Plaintiff's cellular
> telephone number in an attempt to collect the Debt allegedly owed
> by Plaintiff's father, John McNaney.

> American asked Plaintiff i[f] they could speak with John McNaney.

> Plaintiff informed American that his father was deceased and
> requested that American cease calling.

> Thereafter, knowing that John McNaney was deceased, American
> continued to call Plaintiff a couple of times per month for
> approximately one year.

> On or around March 14, 2023, American called Plaintiff's cellular
> telephone number again and asked to speak with Plaintiff's father.

> American's repeated telephone calls and requests to speak to his
> deceased father caused Plaintiff a significant amount of distress.

> Plaintiff again informed American that his father was deceased and
> requested that American cease all communication.

> American's telephone calls to Plaintiff after notice that John
> McNaney passed away were harassing and abusive to Plaintiff.

> Plaintiff is not associated with his father's debt and is not responsible for repayment of his father's debt.
>
> American continued to call Plaintiff, a third party, without being asked to do so, after Plaintiff requested that the calls cease, and after notice that the consumer was deceased.

(ECF No. 13 ¶¶ 10-19.)

Construed in the light most favorable to Plaintiff and taken as true, there is a close relationship between Plaintiff's alleged injury—abuse, harassment, and distress (allegedly caused by Defendant's repeated calls to collect on a debt of Plaintiff's deceased father)—and the common law tort of intrusion upon seclusion.  Plaintiff alleges that he informed Defendant that his father was deceased and told Defendant to stop calling, but Defendant continued to call.  Plaintiff also alleges that, as a result of Defendant's persistent conduct, he "suffered and continues to suffer from emotional distress, anger, fear, and frustration."  (ECF No. 13 ¶ 22.)  The Fourth Circuit has held that a plaintiff adequately alleges an injury in fact where the plaintiff alleges "that, as a 'direct consequence' of [the defendant's] alleged violations of the FDCPA's proscribed practices, she 'suffered and continues to suffer' actually existing intangible harms that affect her personally: 'emotional distress, anger, and frustration.'" *Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017); *see Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017) (concluding that the plaintiff established an injury in fact under Article III for her claim under the FDCPA where she alleged "that as a consequence of [the defendant's] alleged violations of the FDCPA's proscribed practices, she 'suffered and continues to suffer' from 'emotional distress, anger, and frustration'").  Accordingly, at this stage, Plaintiff alleges a concrete injury for purposes of Article III standing.  The court declines to dismiss the Amended Complaint on this basis.

B.      **Federal Rules of Civil Procedure 8(a) and 12(b)(6)**

1.      **FDCPA (Count I)**

To state a claim for relief under the FDCPA, "Plaintiff must allege that '(1) the plaintiff

has been the object of collection activity arising from consumer debt, (2) the defendant is a debt []

collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission

prohibited by the FDCPA.'" *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 577,

585 (D. Md. 2013) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759–60 (D. Md. 2012)).

a.      *Consumer*

As an initial matter, Defendant contends that Plaintiff may not assert a claim under the

FDCPA because Plaintiff does not allege facts to suggest that he owed a debt.  (ECF No. 14-1 at

4.)  In response, Plaintiff argues that any aggrieved party may bring an action under the FDCPA

and MCDCA.  (ECF No. 17 at 1.)  On this issue, the court finds *Rawlinson v. L. Off. of William*

*M. Rudow, LLC* instructive.  460 F. App'x 254 (4th Cir. 2012).  There, the defendant argued that

the plaintiff could not state a claim under the FDCPA because the debt at issue was that of her

nephew.  *Id.* at 257.  The district court agreed.  *Id.*  On appeal, the Fourth Circuit explained:

> The enforcement provision of the FDCPA imposes liability on any
> debt collector who fails to comply with the statute's provisions
> "with respect to any person." 15 U.S.C. § 1692k(a) (emphasis
> added). Consequently, absent a limitation in the substantive
> provisions of the FDCPA, any aggrieved party, not just a debtor,
> may bring an action under the statute. *Cf. Wright v. Fin. Serv. of*
> *Norwalk, Inc.*, 22 F.3d 647, 649–50 (6th Cir. 1994); *see also Beck*
> *v. Maximus, Inc.*, 457 F.3d 291, 294 (3rd Cir. 2006) (noting that the
> FDCPA "is intended to protect both debtors and non-debtors from
> misleading and abusive debt-collection practices"). The legislative
> history of the FDCPA endorses this reading of the statute:
>
>> This bill also protects people who do not owe money
>> at all. In the collector's zeal, collections effort[s] are
>> often aimed at the wrong person either because of
>> mistaken identity or mistaken facts. This bill will

12

> make collectors behave responsibly towards people with whom they deal. Another group of people who do not owe money, but who may be deliberately harassed are the family, employer and neighbors of the consumer. These people are also protected by this . . . bill.

*Dutton v. Wolhar*, 809 F. Supp. 1130, 1134–35 (D. Del. 1992) (quoting H.R. Rep. No. 131, 95th Cong. 1st Sess. 8) (holding that, in enacting the FDCPA, "[i]t was Congress's intent to protect people other than debtors . . . who are subject to harassment by debt collectors").

Furthermore, at least three of the FDCPA provisions relied on by Rawlinson contain no limitation as to who may invoke them. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f. Indeed, § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." (emphasis added). Thus, by its express terms, *any person*—not just any debtor—who is the subject of abusive debt collection efforts may bring suit pursuant to § 1692d.

Although § 1692e does not explicitly apply to "any person," it broadly prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Reading this provision in conjunction with § 1692k(a), courts have properly interpreted § 1692e to mean that "any aggrieved party" may bring an action under the provision. *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003) (quoting *Wright*, 22 F.3d at 649–50). Similarly, § 1692f states that debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." Consequently, as under § 1692e, any person who has been harmed by an unfair or unconscionable debt collection practice has standing to bring a claim under § 1692f.

*Id.* at 257-58. Accordingly, the *Rawlinson* court concluded that the plaintiff's allegations were sufficient to permit her to bring a claim under the FDCPA where she alleged that the defendant sought to collect a debt from her nephew and, in doing so, the defendant violated the FDCPA. *Id.* at 258.

While the FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3), the FDCPA provisions on which Plaintiff relies to pursue his claims contain no language to suggest that actions to redress violations of sections 1692d, 1692e, and 1692f are limited to consumer plaintiffs.  *See Rawlinson, supra; Corson v. Accts. Receivable Mgmt., Inc.*, No. CIV.A. 13-01903 JEI/, 2013 WL 4047577, at *5 (D.N.J. Aug. 9, 2013) (noting that the plaintiff "does have standing to assert claims pursuant to §§ 1692d, 1692e and 1692f since those sections are not restricted to 'consumers'"); *Morris v. Portfolio Recovery Assocs., LLC*, No. 2:14-CV-02612, 2015 WL 4523855, at *2 (D. Kan. July 27, 2015) ("The relevant portion of the FDCPA—§ 1692d—employs clear terminology that it is intended to govern the debt collector's actions in relation to 'any person' in connection with the collection of a debt."); *Jeter v. All. One Receivables Mgmt., Inc.*, No. 10-2024-JWL, 2010 WL 2025213, at *2 (D. Kan. May 20, 2010) ("[T]here is no basis in the statute for imposing a general requirement for the assertion of claims under Sections 1692d, 1692e, and 1692f that the plaintiff be the actual debtor targeted by the defendant debt collector.").

As set forth above, Plaintiff alleges that Defendant called him various times in an attempt to collect the Debt incurred by his deceased father (after notification that Plaintiff's father was deceased), and, in doing so, Defendant violated the FDCPA.  (ECF No. 13 ¶¶ 10, 13-14, 19, 24-31.)  Plaintiff's allegations are sufficient to pursue his FDCPA claim.  The court therefore declines to dismiss the FDCPA claim on the basis that Plaintiff is not a consumer within the meaning of the FDCPA.[9]

---

[9] Defendant does not make any specific arguments regarding whether Plaintiff may bring a claim under the MCDCA. That notwithstanding, the same conclusion is true under the MCDCA—the statute on its face does not limit its protections to debtors. *See* MD. CODE ANN., COM. LAW § 14-202(6) ("In collecting or attempting to collect an alleged debt a collector may not . . . Communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor . . .").

b.      *Consumer Transaction*

To satisfy the first FDCPA prong, Plaintiff must allege that he has been the object of collection activity arising from consumer debt. *Sterling*, 943 F. Supp. 2d at 585. Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Although in some cases "[t]o adequately plead facts showing a consumer debt, a plaintiff must do more than merely track the statute's language," *Piper v. Meade & Assocs., Inc.*, 282 F. Supp. 3d 905, 911 (D. Md. 2017); *see Alston v. Cavalry Portfolio Servs., LLC*, No. 8:12-cv-03589-AW, 2013 WL 665036, at *3 (D. Md. Feb. 22, 2013) (holding that plaintiff's allegation that the debt was consumer in nature because it "'arose from services provided by HSBC, which were primarily for family, personal, or household purposes' warrants no weight as it is merely a 'formulaic recitation of the elements of a cause of action'"), "[i]n cases involving a non-debtor plaintiff . . . plaintiffs need not plead the nature of the underlying debt with similar particularity because 'non-debtors cannot reasonably be expected to know the specific nature of a third party's debt without the benefit of discovery.'" *Schools v. PMAB, LLC*, No. CIV.A. TDC-14-0716, 2014 WL 6460613, at *3 (D. Md. Nov. 14, 2014) (quoting *Corson*, 2013 WL 4047577, at *4). "[I]t is sufficient to plead facts supporting an inference that the debt was a consumer debt." *Id.*

Here, Plaintiff alleges:

> A financial obligation (the "Debt") was allegedly incurred by Plaintiff's deceased father, John McNaney, to an original creditor (the "Creditor").

> The Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5). John McNaney did not have any business debts.

> The Debt was purchased, assigned or transferred to American for collection, or American was employed by the Creditor to collect the Debt.
>
> The Defendant attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

(ECF No. 13 ¶¶ 6-9.)

Construed in the light most favorable to Plaintiff and taken as true, Plaintiff's allegations that (i) the Debt was incurred by his deceased father and that (ii) his father did not have any business debts are sufficient to satisfy the lower threshold for claims by non-debtors. *See Corson*, 2013 WL 4047577, at *3 ("Because Plaintiff's FDCPA claims are based on ARM's attempts to collect a debt owed by Collins and not Plaintiff, his allegation that the debt is a 'consumer debt' within the meaning of the FDCPA is sufficient."). While the court recognizes that the *Schools* plaintiff also included allegations regarding the defendant's website to suggest that the debt was a consumer debt, the court notes that *Schools* holds that the plaintiff's allegations were "more than sufficient to meet this lesser threshold for claims by non-debtors." *See Schools*, 2014 WL 6460613, at *3 (concluding that allegations that that the defendant "is registered as a 'collection agency' in Maryland, that there are numerous complaints before the Better Business Bureau regarding [the defendant's] attempts to collect personal medical debts, and that [the defendant's] website states that it provides 'collection services for medical financial professionals'" is "more than sufficient to meet this lesser threshold for claims by non-debtors"). Here, although Plaintiff does not set forth allegations regarding Defendant's website,[10] Plaintiff alleges that Debt falls within the definition of "consumer debt" for purposes of the FDCPA. *See Corson, supra.*

---

[10] In his Response, Plaintiff refers the court to Defendant's websites and contends that "Defendant's websites make clear that it collects consumer debt." (ECF No. 17 at 7.) Plaintiff may not amend the Amended Complaint through a responsive pleading. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("[C]ourts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or

### c.       *Debt collection activity prohibited by the FDCPA*

To satisfy the final FDCPA prong, Plaintiff must allege that Defendant engaged in debt collection activity prohibited by the FDCPA.  *Sterling*, 943 F. Supp. 2d at 585.  Defendant argues that Plaintiff makes various allegations regarding violations of the FDCPA without any factual basis for the allegations.  (ECF No. 14-1 at 5.)  In Count I, Plaintiff alleges that Defendant violated three sections of the FDCPA: §§ 1692d, 1629e, 1692f.

### i.       *15 U.S.C. § 1692d*

Defendant argues that Plaintiff fails to state a claim under 15 U.S.C. § 1692d because there is no allegation that Defendant mentioned Plaintiff's father's debt.  (ECF No. 14-1 at 5.)  In response, Plaintiff contends that he has sufficiently pled a FDCPA under 15 U.S.C. § 1692d by alleging that Defendant placed repeated calls after Plaintiff advised Defendant that his father had died and directed Defendant to stop calling.  (ECF No. 17 at 7-8.)

The FDCPA prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  As stated above, courts apply a less stringent standard for non-debtors bringing suit under the FDCPA.  *See Schools, supra*; *Morris*, 2015 WL 4523855, at *3 (noting that "courts have implicitly applied a less stringent standard for non-debtors to bring suit under the FDCPA than debtors").

Plaintiff alleges that Defendant violated § 1692d(5) based on Defendant's repeated telephone calls to Plaintiff.  (ECF No. 13 ¶¶ 10-20.)  Plaintiff further alleges that Defendant continued to call, knowing Plaintiff's father was deceased, and after he requested that Defendant

---

incorporated into the complaint." (citations omitted)); *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

cease calling. *Id.* ¶¶ 12-13, 16, 19.  At this stage, Plaintiff FDCPA claim under § 1692d is sufficient and provides Defendant with fair notice of the claim and basis for same.  *See Jeter v. All. One Receivables Mgmt., Inc.*, No. 10-2024-JWL, 2010 WL 2025213, at *5 (D. Kan. May 20, 2010) (noting that the plaintiff's FDCPA claim under section § 1692d(5) is not conclusory and provides the defendant with fair notice of the claim where the plaintiff alleges "that defendant continually called him after he had repeatedly advised it that he was not the debtor that it was seeking"); *Morris*, 2015 WL 4523855, at *4 (denying motion to dismiss the plaintiff's FDCPA claim under § 1692d(5) where the non-debtor plaintiff received numerous calls from a debt collector, advised the debt collector she was not the debtor, but the debt collector continued to call).

### ii.      *15 U.S.C § 1692e / 15 U.S.C § 1692f*

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The FDCPA further prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Defendant argues that Plaintiff fails to state a claim under 15 U.S.C. §§ 1692e and 1629f because the Amended Complaint contains no allegations of misleading, unfair, deceptive, or unconscionable representations in connection with a debt.  (ECF No. 14-1 at 5-6.)

Plaintiff alleges only that Defendant requested to speak with his deceased father.  (ECF No. 13 ¶¶ 11, 14.)  The Amended Complaint sets forth no allegations to suggest that Defendant "used false, deceptive, or misleading representation or means in connection with the collection of a debt," 15 U.S.C. § 1692e, or that Defendant "used unfair and unconscionable means to collect a debt."  15 U.S.C. § 1692f.  Therefore, Plaintiff fails to allege facts to support his FDCPA claims

under §§ 1692e and 1692f, and the Motion will be granted as to Count I – FDCPA §§ 1692e and 1692f.[11]

### 2. MCDCA (Count II)

In Count II, Plaintiff alleges Defendant violated the MCDCA by repeatedly contacting him with the intent to harass or abuse.  (ECF No. 13 ¶ 35.)

Under the MCDCA, a debt collector may not: "[c]ommunicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor[.]"  MD. CODE ANN., COM. LAW § 14-202(6).  The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction."  *Id.* § 14-201(b).  A consumer transaction is defined as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes."  *Id.* § 14-201(c).  "The MCDCA definition of consumer transaction tracks the FDCPA's definition of consumer debt."  *Ellis v. Palisades Acquisition XVI LLC*, No. CV JKB-18-03931, 2019 WL 3387779, at *6 (D. Md. July 26, 2019).

For the same reasons set forth in Section III.B.1, *supra*, the court is satisfied that Plaintiff adequately alleges a consumer transaction within the meaning of the MCDCA and adequately alleges that Defendant's repeated phone calls violated section 14-202(6) of the MCDCA.  *See Thomas v. Smith, Dean & Assocs., Inc.*, No. ELH-10-CV-3441, 2011 WL 2730787 (D. Md. July 12, 2011), *report and recommendation adopted*, No. CIV.A. ELH-10-3441, 2011 WL 3567043, at *6 (D. Md. Aug. 10, 2011) ("The MCDCA's prohibitions are generally parallel to the prohibitions

---

[11] Plaintiff does not explicitly address 15 U.S.C. §§ 1692e and 1692f; most of his Response focuses on 15 U.S.C. § 1692d.  That notwithstanding, Plaintiff urges that the "FDCPA is a strict liability statute, meaning that a consumer need only prove one violation in order to establish liability."  (ECF No. 17 at 8-9; citing *Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 634 (D. Md. 2020)).  In *Best*, the court allowed the plaintiff's claim for statutory damages to proceed because the court "found that Plaintiff has raised a genuine dispute of material fact as to multiple alleged FDCPA violations."  450 F. Supp. 3d at 634.  Plaintiff does not provide any explanation how this case pertains to the instant Motion or the stage of this case.

of the FDCPA, and the actions of both Smith, Dean and Signature therefore violated the Maryland statute as well."); *Schools*, 2014 WL 6460613, at *4 ("Because the MCDCA definitions relating to consumer debt are substantially similar to those of the FDCPA, the Court's analysis in the preceding section, that the pleadings sufficiently allege that the underlying Debt was a consumer debt, applies equally to the MCDCA claim."); *Ellis*, 2019 WL 3387779, at *6 (concluding that "[f]or the same reasons that Plaintiff's debt is 'consumer' under the FDCPA, Plaintiff's transaction is 'consumer' under the MCDCA"); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492 (D. Md. 2004) (denying motion for summary judgment on the plaintiff's MCDCA § 14-202(6) and FDCPA § 1692d(5) for the same reasons).  The Motion will be denied as to Count II.

### 3.    Intrusion Upon Seclusion (Count III)

Intrusion upon seclusion is one of the four recognized privacy torts under Maryland law. To state a claim for invasion of privacy by intrusion upon seclusion, Plaintiff must allege that Defendant intentionally intruded upon his "solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person." *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 383 (D. Md. 2012).  "Intent is required; the tort cannot be committed by unintended conduct amounting only to a lack of due care." *Id.*

Defendant argues that Plaintiff's claim fails because he relies solely on "non-specific allegations in an attempt to meet the definition of invasion of privacy under the RESTATEMENT OF TORTS, SECOND § 625(b)."  (ECF No. 14-1 at 8-9.)  Plaintiff responds that Defendant's repeated calls following Plaintiff's request for Defendant to cease calling is sufficient to state a claim for invasion of privacy by intrusion upon seclusion.[12]  (ECF No. 17 at 11.)

---

[12] In arguing that he states a claim for invasion of privacy by intrusion upon seclusion, Plaintiff refers the court back to his Article III standing argument.  (ECF No. 17 at 11.)  The court's conclusion that Plaintiff's allegations are sufficient for purposes of Article III standing does not equate to a finding regarding sufficiency to state a claim. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) ("A few unwanted automated text messages may

*Lipscomb v. Aargon Agency, Inc.* provides guidance. No. PWG-13-2751, 2014 WL 5782040 (D. Md. Nov. 5, 2014).[13]   There, the plaintiff alleged that the defendants violated 15 U.S.C. §1962d and Maryland common law prohibiting intrusion upon seclusion.  *Id.* at *2.  The court explained:

> Section 1692d prohibits, with exceptions not relevant here, a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, such as by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," *id.* § 1692d(5). Intrusion upon seclusion is one form of the common law tort of invasion of privacy in Maryland, and it is "defined as: '[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person.'" *Mitchell v. Baltimore Sun Co.*, 883 A.2d 1008, 1022 (Md. Ct. Spec. App.2005) (quoting *Furman v. Sheppard*, 744 A.2d 583, 585 (Md. Ct. Spec. App. 2000) (citation and quotation marks omitted)).

In analyzing the plaintiff's FDCPA § 1692d and intrusion upon seclusion claims, the *Lipscomb* court further explained:

> The question at the core of these two claims is whether Defendant's calls to Plaintiff were reasonable, based on their frequency and timing. "Whether there is actionable harassment or annoyance [for purposes of § 1692d] turns not only on the volume of calls made, but also on the pattern of calls." *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 505 (D. Md. 2004). For example, calls placed after a debtor has asked the collector to stop calling may evidence an intent to harass. *See Finney v. MIG Capital Mgmt., Inc.*, No. 13–2778, 2014 WL 1276159, at *12 (S.D. W.Va. Mar. 27, 2014) ("[T]he fact that . . . calls were placed after Finney informed MIG that the debt was disputed and after Finney requested that all further communications be directed to [her attorney] suggested [an intent to harass]," as "courts have concluded that a debt collector's failure to respect a consumer's request to cease

---

be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable."); *id.* at 463 n.2 (noting that "the number of texts is irrelevant to the injury-in-fact analysis").

[13] While *Lipscomb* was before the court on a motion for summary judgment, the court's analysis remains instructive.

communications concerning a debt may be indicative of intent to harass or annoy."); *Little v. Portfolio Recovery Assocs., LLC*, No. 12–2205–JTM, 2014 WL 1400660, at *3 (D. Kan. Apr. 10, 2014) ("[C]ontinuing to call after the debtor asks for such calls to stop may evidence an intent to harass . . . ."); *Conover v. BYL Coll. Servs., LLC*, No. 11–CV–6244P, 2012 WL 4363740, at *6 (W.D.N.Y. Sept. 21, 2012) ("[H]arassment may be found where a debt collector . . . continues to call after the debtor has requested that the debt collector stop calling."); *Gilroy v. Ameriquest Mortg. Co.*, 632 F. Supp. 2d 132, 136 (D.N.H. 2009) ("Intent [to harass] may . . . be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called . . . ."). Further, "[t]he reasonableness of [a] volume of calls and their pattern is a question of fact for the jury." *Akalwadi*, 336 F. Supp. 2d at 506. Likewise, for an invasion of privacy claim,

> the question of how far a creditor may go to collect his debt must be decided on the individual facts of each case, but usually on the ground of reasonableness. It is generally recognized that a creditor has a right to take reasonable measures to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy.

*Household Finance Corp. v. Bridge*, 250 A.2d 878, 884 (Md. 1969). Additionally, when a plaintiff is successful on an invasion of privacy claim against a creditor, "there is usually present a pattern of harassment on the part of the creditor, or the communication, if not of such frequency as to constitute harassment, has been of such a nature as to possess a vicious quality." *Id.* at 884.

*Lipscomb*, 2014 WL 5782040, at *2-3; *see Drake v. Synchrony Bank*, No. CV CCB-19-2134, 2023 WL 6621345, at *3 (D. Md. Oct. 11, 2023) (noting that "[t]he tort has developed its own line of case law for debt collections and repeat-calls" and "[i]n such a case, the court considers (1) the degree of persistency with which the oral invasion of privacy occurs; [and] (2) the vicious quality of the oral invasion of privacy") (citations omitted)).

Here, Plaintiff alleges that Defendant called him in or around May 2022.  (ECF No. 13 ¶ 10.)  Thereafter, Defendant called Plaintiff "a couple of times per month for approximately one

year." *Id.* ¶ 13.  On or around March 14, 2023, Defendant called Plaintiff again.  *Id.* ¶ 14.  While

the volume of calls, alone, is insufficient to maintain an intrusion upon seclusion claim,[14] here,

Plaintiff provides additional allegations.  Specifically, Plaintiff alleges that Defendant continued

to call Plaintiff knowing that his father was deceased; that he is not associated with his father's

debt; that he is not responsible for repayment of the debt; and that he told Defendant to cease

calling, but Defendant continued to call.  (ECF No. 13 ¶¶ 12-19.)  Construed in the light most

favorable to Plaintiff, and taken as true, the Amended Complaint competently states an intrusion

upon seclusion claim.  *See Jones v. Aberdeen Proving Ground Fed. Credit Union*, No. CV ELH-

21-1915, 2022 WL 1017094, at *22-23 (D. Md. Apr. 5, 2022) (denying motion to dismiss intrusion

upon seclusion claim where the plaintiff alleges that the defendant knew he did not owe the debt

and continued to call him several times to try to collect on his loan); *Lipscomb*, 2014 WL 5782040,

at *3 (noting that "calls placed after a debtor has asked the collector to stop calling may evidence

an intent to harass").  The Motion will be denied as to Count III.

## IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 14) will

be granted in part and denied in part: granted as to the FDCPA claims pursuant to FDCPA §§

1692e and 1692f set forth in Count I; and denied in all other respects.

---

[14] *See Shlikas v. Sallie Mae, Inc.*, No. CV WDQ-06-2106, 2009 WL 10681983, at *2 (D. Md. May 4, 2009), *aff'd sub nom. Shlikas v. Arrow Fin. Servs.*, 487 F. App'x 68 (4th Cir. 2012) ("[N]o case applying Maryland law has sustained an intrusion upon seclusion claim based on call volume alone."); *Jones v. Aberdeen Proving Ground Fed. Credit Union*, No. CV ELH-21-1915, 2022 WL 1017094, at *22 (D. Md. Apr. 5, 2022) (noting that "[b]y itself, the volume of contacts alleged by plaintiff falls far short of the circumstances [], in which the Maryland courts left open the possibility of a claim for intrusion upon seclusion."); *Drake*, 2023 WL 6621345, at *4 (noting that the plaintiff fails to allege highly offensive conduct where "he received approximately 109 phone calls in just over one month's time" and "[h]is summary of calls reflects at least one call almost every day, multiple calls most days, and a nine-day period with thirty-one phone calls"); *Awah v. Wells Fargo Dealer Servs., Inc.*, No. 1872, 2019 WL 410412, at *2 (Md. Ct. Spec. App. Jan. 31, 2019) (rejecting intrusion upon seclusion claim where the defendant called the plaintiff 15 to 17 times a day); *Shlikas v. Sallie Mae, Inc.*, No. CV WDQ-06-2106, 2009 WL 10681983, at *2 (D. Md. May 4, 2009), *aff'd sub nom. Shlikas v. Arrow Fin. Servs.*, 487 F. App'x 68 (4th Cir. 2012) (holding 148 calls over a 13-month-period without proof of viciousness insufficient to state a claim).

/S/

June 14, 2024

_____
Julie R. Rubin
United States District Judge